UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) CIVIL ACTION NO. | |
| v. ) 07-00255-EFS | |
| ) | |
| ALDER GOLD - COPPER COMPANY ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**CONSENT DECREE BETWEEN THE UNITED STATES OF AMERICA
AND ALDER GOLD - COPPER COMPANY**

TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | GENERAL PROVISIONS | 2 |
| III. | REIMBURSEMENT OF RESPONSE COSTS | 6 |
| IV. | FAILURE TO COMPLY WITH REQUIREMENTS OF THE CONSENT DECREE | 8 |
| V. | PENALTY PAYMENT | 10 |
| VI. | COVENANTS NOT TO SUE BY THE UNITED STATES | 10 |
| VII. | COVENANTS NOT TO SUE BY THE DEFENDANTS | 13 |
| VIII. | EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION | 13 |

## I. BACKGROUND

A.  The United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA") filed a complaint in this matter pursuant to 42 U.S.C. §§ 9607(a) and 9613.

B.  The United States in its complaint seeks reimbursement of response costs incurred by the United States for response actions taken at or in connection with the release or threatened release of hazardous substances at the Alder Mill Site located Okanogan County, Washington.

C.  The United States alleges that a release or threatened release of hazardous substances at or from the Site has caused the United States to incur response costs. The Alder Mill Site is owned by Defendant. From 1949 to 1952, the Defendant conducted mining operations at this Site which included concentrating operations. The primary metals of concern were arsenic, cadmium, lead and zinc in the mill building and lead and arsenic in the mill tailings pond. On September 9, 2002, the Defendant entered into an Administrative Order on Consent (AOC) with EPA to perform a removal action at the Alder Mill Site and to reimburse EPA for future response costs, including costs incurred in work takeover. On various occasions, EPA took over and performed portions of the work required by the AOC. EPA sent a bill to Defendant for reimbursement of EPA costs pursuant to the AOC on March 4, 2005 and sent a follow-up demand letter on June 30, 2005. EPA's costs exceed $700,000. Defendant has not reimbursed EPA for any of its response costs.

D.  By its execution of and participation in this Consent Decree, Defendant does not admit any issue of law or fact, or any liability, including any liability to the United States arising out of the transactions or occurrences alleged in the complaint.

E.  The Parties agree and this Court, by entering this Consent Decree, finds that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II. GENERAL PROVISIONS

1.  Jurisdiction and Venue.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9607 and 9613(b).  This Court also has personal jurisdiction over Defendant.  Solely for the purposes of the entry and enforcement of this Consent Decree and the underlying Complaint, Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District and Defendant shall not challenge this Court's jurisdiction to enter and enforce this Consent Decree.

2.  Retention of Jurisdiction.  This Court shall retain jurisdiction of this matter for the purpose of enforcing the terms of this Consent Decree.

3.  Parties Bound.  This Consent Decree is binding upon the United States and upon Defendant and its employees, agents, successors, and assigns.  Any change in ownership or corporate or other legal status, including but not limited to any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Defendant under this Consent Decree.

4. <u>Effective Date.</u> This Consent Decree shall be effective on the date it is entered by the Court.

5. <u>Signatories.</u> The undersigned representative(s) of Defendant to this Consent Decree and the Chief or Deputy Chief of the Environmental Enforcement Section of the Environment and Natural Resources Division of the United States Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such party to this document.

6. <u>Waiver of Challenge to Entry.</u> Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree.

7. <u>Designation of Agent for Service.</u> Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of Defendant with respect to all matters arising under or relating to this Consent Decree. Defendant hereby agrees to accept service in that manner and to waive the formal service requirements of Federal Rule of Civil Procedure 4 and any applicable local rules of this Court, including but not limited to service of summons.

8. <u>Notices and Submissions.</u> Whenever under the terms of this Consent Decree notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States and Defendant, respectively.

As to the United States:

| | |
|---|---|
| Chief, Environmental Enforcement Section | Cyndy Mackey |
| Environment and Natural Resources Division | Assistant Regional Counsel |
| U.S. Department of Justice | U.S. EPA, Region 10 |
| P.O. Box 7611, Ben Franklin Station | 1220 Sixth Avenue |
| Washington, D.C. 20044-7611 | Seattle, Washington 98101 |
| Re: DJ No. 90-11-3-08880 | Re: Alder Mill Superfund Site |

As to Defendant:

Eugene Feltz
Smith, McDonald and Vaught, LLP
1100 SW 6th Avenue
Portland, Oregon 97204

    9.    Definitions. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601-9675, or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree the following definitions shall apply:

    a. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

    b. "Consent Decree" shall mean this Decree.

    c. "Defendant" shall mean the Alder Gold-Copper Company.

    d. "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

e. "EPA" shall mean the U.S. Environmental Protection Agency and any successor departments or agencies of the United States.

f. "Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26 of the U.S. Code, compounded on October 1 of each year.

g. "National Contingency Plan" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, including, but not limited, to any amendments thereto.

h. "Parties" shall mean the United States and Defendant.

i. "Property" shall mean approximately 120 acres located in Okanogan County, Washington that is generally shown on the map included in Appendix A and more specifically described as the following three parcels:

> -Parcel # 3322182002. SE/4SE/4, Sec 18, T33N, R22E, Okanogan County, Washington comprising 40.25 acres. Northwest parcel on subject map.
> -Parcel #3322191005. NE/4Ne/4, Section 19, T33N, R22E, Okanogan County, Washington comprising 40 acres. Southwest parcel of subject map.
> -Parcel # 332204004. NW/4NW/4, Sec 20, T33N, R22E, Okanogan County, Washington comprising 39.65 acres. Southeast parcel on subject map.

j. "Past Response Costs" shall mean all costs, including but not limited to direct, indirect, and allocated costs that the United States has incurred or paid at or in connection with the Site through the date of lodging of this consent decree, including any costs reimbursed to the State or to a federal agency or department from the Hazardous Substance Superfund for the Site,

plus accrued Interest on all such costs for the period through and including thirty (30) days following the entry of this Consent Decree.

k. "Site" shall mean the two parcels of property that were addressed in the response actions for the Alder Mill Site located in Okanogan County, Washington. The specific properties are Parcel # 3322170148 (33-22-17) TAX 148 PT SW SW and Parcel #3322182002 (33-22-18 SE SE).

l. "United States" shall mean EPA and the U.S. Department of Justice ("DOJ") acting on behalf of EPA.

### III. REIMBURSEMENT OF RESPONSE COSTS

10. <u>Payment Upon Sale of Property.</u> Within thirty days of the sale of the Property or any parcel thereof in accordance with Paragraph 12 (Agreement to Sell Property), Defendant will pay the United States, from the proceeds of the sale, the net selling price received from the sale. As used in this Paragraph, "net selling price" for Parcel #3322182002 means the selling price of the parcel minus ten percent of the selling price; the customary and reasonable commission fees charged by a licensed real estate agent; the customary and reasonable real estate closing costs and any property taxes and interest owing thereon. As used in this Paragraph, "net selling price" for Parcel #3322191005 and Parcel #332204004 means the selling price of the parcel minus the ten percent of the selling price; the customary and reasonable commission fees charged by a licensed real estate agent; the customary and reasonable real estate closing costs; any property taxes and interest owing thereon and a total indebtedness of $25,050 owning by Alder Gold-Copper Co. secured by the deed of trust recorded on April 13, 2007 with an identification number of 3116934

in the Okanogan County Recorder's Office. Payment shall be made by the method specified in Paragraph 11 (Payment Method).

11. <u>Payment Method.</u> The Defendant shall make the payment required by Paragraph 10 (Payment Upon Sale of Property) by Electronic Funds Transfer ("EFT") to the DOJ lockbox bank, referencing the EPA ID No. 10AG and the U.S. Attorney's Office file number DJ 90-11-3-08880. Payment shall be made in accordance with instructions provided to Defendant upon execution of the Consent Decree by the Financial Management Unit of the U.S. Attorney's Office. Any EFTs received at the DOJ lockbox bank after 11:00 A.M. (Eastern Time) will be credited on the next business day. At the time of payment, Defendant shall send written notice of payment and a copy of any transmittal documentation to the United States in accordance with Paragraph 8 (Notices and Submissions) and to the Docket Clerk, U.S. Environmental Protection Agency, Office of Regional Counsel, 1200 Sixth Avenue, Seattle, Washington 98101

12. <u>Agreement to Sell Property.</u> Defendant hereby agrees to use all reasonable, good faith efforts to sell the Property. Such reasonable good faith efforts shall include, but not be limited to, the following:

    a.    Using his best efforts to ensure that the parcels are sold at the highest price reasonably feasible;

    b.    Using a real estate agent or broker who is licensed in the State of Washington and who shall follow the usual and normal practices for selling real property, including, for example, listing the property in one or more real estate listing services regularly used by real estate agents and brokers, as well as using other reasonable means to ensure that the availability of the property is know to potential buyers;

c. Selling the property for a sale price that equals or exceeds the appraised value established in the appraisal set forth as Appendix B unless otherwise agreed by EPA.

13. Deadline for Sale of Property. Defendant shall sell the Property by September 1, 2008. In the event that the Property has not been sold by September 1, 2008, Defendant shall provide the United States, in accordance with Paragraph 8 (Notices and Submissions), a full description of all efforts made to sell the Property and an explanation why Defendant has been unable to sell the Property. Based upon Defendant's submission, as well as other information the United States may gather independently, the United States shall determine each year thereafter whether this Paragraph shall be terminated or extended for an additional period of one year.

14. Notice of Encumbrances. Should the Property become encumbered in any manner by a legal claim by a third party or in any other manner, Defendant shall immediately provide written notice to the United States in accordance with Paragraph 8 (Notices and Submissions).

## IV. FAILURE TO COMPLY WITH REQUIREMENTS OF THE CONSENT DECREE

15. Interest on Late Payments. In the event that Defendant does not make any payment required by Section III (Reimbursement of Response Costs) or Paragraph 16 (Stipulated Penalties) when due, Defendant shall pay Interest, which shall accrue on the unpaid balance from the date payment is owed through the date of payment.

16. Stipulated Penalties

a. If Defendant fails to comply with any requirement of this Consent Decree within the identified period of time, the Defendant shall pay as a stipulated penalty, in addition to any Interest required by Paragraph 15 (Interest on Late Payments), $250 per day per violation.

b.  Stipulated penalties are due and payable within thirty days of Defendant's receipt from EPA of a demand for payment of the penalties. All payments under this Paragraph 16 (Stipulated Penalties) shall be paid by certified or cashier's check made payable to "EPA Hazardous Substance Superfund" and shall be mailed to: Mellon Bank, EPA Region 10 Superfund, P.O. Box 371099M, Pittsburgh, Pennsylvania 15251. Such payments shall reference EPA ID No. 10AG and DOJ Case Number DJ 90-11-3-08880. Copies of check(s) paid pursuant to this Paragraph 16 (Stipulated Penalties), and any accompanying transmittal letter, shall be sent to the United States as provided in Paragraph 8 (Notices and Submissions). Penalties shall accrue as provided above regardless of whether EPA has notified Defendant of the violation or made a demand for payment, but need to be paid only upon demand. All penalties shall begin to accrue on the day after complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

17.  <u>Reimbursement of Collection Costs.</u>  If the United States must bring an action to enforce this Consent Decree against Defendant, Defendant shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

18.  <u>Other Remedies.</u>  Payments made under Paragraph 15 (Interest on Late Payments), Paragraph 16 (Stipulated Penalties), and Paragraph 17 (Reimbursement of Collection Costs) shall be in addition to any other remedies or sanctions available to the United States by virtue of Defendant's failure to comply with the requirements of this Consent Decree.

9

## V. COVENANT NOT TO SUE BY THE UNITED STATES

19.     Covenant by the United States.  In consideration of the actions that will be performed and the payments that will be made by Defendant under the terms of this Consent Decree, and except as specifically provided in Paragraph 20 (Reservation of Rights), the United States covenants not to sue Defendant pursuant to 42 U.S.C. § 9607(a) to recover Past Response Costs.  This covenant not to sue extends only to Defendant and does not extend to any other person.  This covenant not to sue shall take effect upon receipt by the United States of all payments required under this Consent Decree.

20.     Reservation of Rights.  Except as expressly provided in Paragraph 19 (Covenant by the United States), nothing contained herein shall in any way limit or restrict the response and enforcement authority of the United States to initiate appropriate action, either judicial or administrative, under 42 U.S.C. §§ 9604, 9606, 9607 or any other provision of law, against Defendant or against any person or entity not a party to this Consent Decree.  The covenant not to sue set forth in Paragraph 19 (Covenant by the United States) does not pertain to any matters other than those expressly specified therein.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Defendant with respect to all other matters, including but not limited to:

   a. liability for failure of Defendant to meet the requirements of this Consent Decree;

   b. liability for damages for injury to, destruction of, or loss of natural resources and for the costs of any natural resource damage assessment;

10

c. liability for response costs that have been or may be incurred by any federal natural resources trustee that has spent or may in the future spend funds relating to this Site;

d. criminal liability;

e. liability for injunctive relief or enforcement of an administrative order under 42 U.S.C. § 9606;

f. liability arising from the past, present, or future disposal, release, or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site;

g. liability arising from the future disposal, release, or threat of release of a hazardous substance, pollutant, or contaminant at the Site; and

h. liability for past, present, or future violations of federal or state law other than liability resolved by this Consent Decree.

21. <u>Reopener.</u> The covenant not to sue set forth in Paragraph 19 (Covenant by the United States) and the contribution protection set forth in Paragraph 25 (Contribution Claims and Protection) will become null and void if Defendant's certification in Paragraph 22 (Certification by Defendant ) is false or materially inaccurate.

22. <u>Certification of Defendant.</u> Defendant hereby certifies that to the best of its knowledge and belief it has conducted a thorough, comprehensive, good faith search for documents and has fully and accurately responded to all administrative information requests, discovery requests, and disclosure requirements imposed by the local rules of this Court, the Federal Rules of Civil Procedure, or any other obligation imposed by state, federal, or local law. Defendant hereby also certifies that to the best of its knowledge it has:

a. not altered, mutilated, discarded, destroyed, or otherwise disposed of any records,

11

documents, or other information relating to its potential liability regarding the Site since notification of potential liability by the United States or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to 42 U.S.C. §§ 6927, 9604(e), and 9622(e). Provision of false, fictitious, or fraudulent statements or representations to the United States may subject Defendant to criminal penalties under 18 U.S.C. § 1801.

  b. submitted to EPA Financial Information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Settling Party executed this Agreement; and

  c. fully disclosed the existence of any insurance policies that may cover claims relating to cleanup of the Site.

## VI. COVENANTS NOT TO SUE BY DEFENDANT

  23. <u>Covenants by Defendant</u>. Defendant hereby covenants not to sue and agrees not to assert any claims or causes of action against the United States or its contractors or employees, with respect to the Past Response Costs or this Consent Decree, including but not limited to (1) any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through 42 U.S.C. §§ 9606(b)(2), 9611, 9612, 9613, or any other provision of law, (2) any claim against the United States, including any department, agency, or instrumentality of the federal government, pursuant to 42 U.S.C. §§ 9607 and 9613, related to the Past Response Costs, or (3) any claims arising out

of response actions at the Site. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of 42 U.S.C. § 9611 or 40 C.F.R. § 300.700(d).

## VII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

24.     <u>Effect on Persons not a Party to Consent Decree.</u> Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law. Each of the Parties expressly reserves any and all rights (including but not limited to any right to contribution), defenses, claims, demands, and causes of action that each party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party to this Consent Decree.

25.     <u>Contribution Claims and Protection.</u> With respect to claims for contribution against Defendant for matters addressed in this Consent Decree the Parties agree that Defendant is entitled to such protection from contribution actions or claims as is provided by 42 U.S.C. § 9613(f)(2). The matters addressed in this Consent Decree are Defendant's liability to the United States for Past Response Costs. Such contribution protection is conditioned upon Defendant's compliance with the requirements of this Consent Decree.

26. <u>Notification of the United States.</u> Defendant agrees that with respect to any suit or claim for contribution brought by Defendant for matters related to this Consent Decree, Defendant will notify the United States in writing no later than forty-five days prior to the initiation of such suit or claim. Defendant also agrees that with respect to any suit or claim for contribution brought against Defendant for matters related to this Consent Decree it will notify

the United States in writing within ten days of service of the complaint on them. In addition, Defendant shall notify the United States within ten days of service or receipt of any motion for summary judgment and within ten days of receipt of any order from a court setting a case for trial for matters related to this Consent Decree.

27. Waiver of Defenses. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section VI (Covenant Not to Sue by the United States).

SO ORDERED THIS __28th__ DAY OF ____September____, 2007.

_____s/ Edward F. Shea_____

United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree between Defendant and the United States in the matter of <u>United States v. Alder Gold-Copper</u>, relating to the Alder Mill Site.

FOR THE UNITED STATES OF AMERICA

Date: 8/2/2007

_____
ELLEN MAHAN, Deputy Chief
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date: 8/2/2007

_____
SARAH D. HIMMELHOCH, Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044

_____
United States Attorney
Eastern District of Washington

15

THE UNDERSIGNED PARTIES enter into this Consent Decree between Defendant and the United States in the matter of <u>United States v. Alder Gold-Copper</u>, relating to the Alder Mill Site.

Date: 7/5/2007

_____
DANIEL D. OPALSKI, Director
Office of Environmental Cleanup
U.S. Environmental Protection Agency, Region 10

Date: June 25, 2007

_____
CYNDY MACKEY, Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 10

THE UNDERSIGNED PARTIES enter into this Consent Decree between Defendant and the United States in the matter of <u>United States v. Alder Gold-Copper</u>, relating to the Alder Mill Site.

FOR DEFENDANT:
ALDER GOLD-COPPER COMPANY

Date: 6-11-07          By: *[signature]*, President

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Raymond Dodge
01315 S.W. Corbett Hill Circle
Portland, Oregon 97219-8345

17